# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**Big Lots Stores, Inc. d/b/a**
**Consolidated International,** *et al.,*

      **Plaintiffs,**

**-V-**                                          **Case No. 2:04-810**
                                                    **JUDGE SMITH**
                                                    **Magistrate Judge King**

**Luv N' Care,** *et al.,*

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Plaintiffs Big Lots Stores, Inc. d/b/a Consolidated International, CSC Distribution, Inc., West Coast Liquidators, Inc., Closeout Distribution, Inc., and Durant DC, LLC's Motion for Summary Judgment (Doc. 29) and Defendants Luv N' Care, Ltd. and Luv N' Care International, Inc.'s Motion for Partial Summary Judgment (Doc. 35).  For the reasons that follow, the Court **GRANTS** Plaintiffs' Motion for Summary Judgment and **DENIES** Defendants' Motion for Partial Summary Judgment.

## I.    BACKGROUND

Plaintiffs Big Lots Stores, Inc. d/b/a Consolidated International, West Coast Liquidators, Inc., CSC Distribution, Inc., Closeout Distribution, Inc., and Durant DC, LLC (collectively "Big Lots"), are each separate and distinct business entities that entered into one or more written contracts with Defendants Luv N' Care.  Big Lots Stores, Inc. is an Ohio Corporation, West Coast Liquidators, Inc. is an affiliate of Big Lots Stores, Inc., incorporated in California, CSC

Distribution, Inc. is a wholly owned subsidiary of Big Lots Stores, Inc., incorporated in

Alabama, Closeout Distribution, Inc. is a wholly owned subsidiary of Big Lots Stores, Inc.,

incorporated in Pennsylvania, and Durant DC, LLC is a wholly owned subsidiary of Big Lots

Stores, Inc. formed in Delaware.  Defendants Luv N' Care Ltd. and Luv N' Care International,

Inc. (collectively "Luv N' Care") are Louisiana corporations with their principal place of

business in Monroe, Louisiana.

Defendants Luv N' Care are in the business of manufacturing and importing infant care

products.  As part of its business, Luv N' Care obtains licenses to various trademarked and

copyrighted images for use in its products.  On November 20, 2000, Luv N' Care entered into an

agreement with Frederick Warne & Co., Inc. ("Warne"), the owner of the Beatrix Potter™

trademarks and copyrights.  This agreement provided Luv N' Care with a license (the "license")

to manufacture and sell Beatrix Potter products in North America and Latin America.  The

original expiration date was December 31, 2002.  After the license expired, all rights and title to

the Beatrix Potter products reverted back to Warne, and Luv N' Care could not lawfully sell the

Beatrix Potter products anywhere.  However, the license provided for an additional ninety day

"selling off period" for Luv N' Care to sell any Beatrix Potter products then remaining its

inventory.  This sell-off period was subsequently extended until December 31, 2003.

In addition to the temporal restriction, the license also contained a restriction as to which

specific entities Luv N' Care was permitted to sell the Beatrix Potter products.  The License

provided that Luv N' Care was only permitted to sell Beatrix Potter products to Wal-Mart,

Target, and Toys R' Us stores within the United States.  Luv N' Care could not sell to any other

stores without the prior written consent of Warne in accordance with Section XI(1)(c)(vi) of the

license.  There is no evidence that Luv N' Care obtained Warne's written consent to sell to Big

Lots.  Further, Luv N' Care did not inform Big Lots of these restrictions upon their right to sell

the Beatrix Potter products.

The territory of the initial license including only North American and Latin America.

However, on June 4, 2001, an additional agreement was entered into though which Luv N' Care

obtained a license to manufacture and sell Beatrix Potter products in several European counties

(the "European license").  Great Britain was specifically excluded from this license.  This

license expired on December 31, 2002.

During 2002 and 2003, Luv N' Care made several sales of Beatrix Potter products to Big

Lots.  The sales giving rise to this dispute, however, did not occur until the end of 2003 and later.

Specifically, in November 2003, Eddie Jack Hakim, Luv N' Care's Vice President of Sales and

Marketing, offered the Beatrix Potter products to Big Lots through an overstock offer sheet, as

he had in the past.  The overstock offer sheet is a Luv N' Care spreadsheet setting forth the item

number of the products being offered for sale, a description of the products, the product

packaging, the "every day price" of the product, the estimated quantity available, and the offer

price.  Although a number of products were listed on the overstock offer sheet, only five Beatrix

Potter products are at issue in this case: (1) item #2380, a Beatrix Potter crib mobile; (2) item

#2382, a Beatrix Potter plush crib mobile; (3) item #2682, a Beatrix Potter teether with photo

album; (4) item #2640, a Beatrix Potter towel set; and (5) item #2575, a Beatrix Potter baby

book.[1]

---

[1] Defendants Luv N' Care only seek summary judgment on Plaintiffs' claims related to item
#'s 2380 and 2382, the crib mobile and plush crib mobile.

Mr. Hakim sent this overstock offer sheet to Ann Ockington, a buyer in Big Lots' wholesale division, because they had previously negotiated deals between their respective companies.  Correspondence was exchanged between Mr. Hakim and Ms. Ockington via email and telephone.  In addition to the negotiations, updated overstock lists and samples of the products were provided to Ms. Ockington to review.  On December 19, 2003, Mr. Hakim faxed an updated overstock list, which showed the state of the negotiations at that time.[2]

On that same day, December 19, 2003, Mr. Hakim phoned Natalie Perkins, Luv N' Care's office operations manager, and informed her that the Beatrix Potter crib mobile and plush crib mobile had been sold to Big Lots and should be set aside for Big Lots.  An inventory sheet dated that same day indicates that both products were electronically deleted from Luv N' Care's available inventory. (*See* 2nd December 19, 2003 Inventory List, attached as Ex. 2 to Perkins Aff.).

On December 23, 2003, Ann Ockington emailed Mr. Hakim, regarding the mobiles. Specifically, she stated:

> Hi Eddie, I received your counteroffers.  I appreciate you going to bat for us on this deal, however Melanie and I both feel we are too far apart.  We are passing on everything except the Mobiles.  Between the two of us, you will receive PO's for the entire quantities available.  Please send me the master weight and cube, and FOB point.

(E.J. Hakim Depo. at 100, 106, Ex. 5).  In a reply email dated December 29, 2003, Mr. Hakim provided Ms. Ockington with the information she requested regarding the mobiles.  There was

---

[2] Mr. Hakim included his characterizations of the negotiations, including referring to an offer and final ok of that offer.  Luv N' Care attempts to rely on this as evidence of formation of a contract.  However, Mr. Hakim's characterization of what constitutes a contract is irrelevant to whether a legally binding contract was formed.

some further correspondence regarding the purchase orders, and specifically on December 31, 2003, the day Luv N' Care's license expired, Mr. Hakim wrote Mr. Ockington: "Hi Ann, I'm looking forward to receiving the PO's next week and if you need anything else please let me know." (E.J. Hakim Depo. at 118-19, Ex. 5).

At this point in the negotiations, Luv N' Care was aware that it would not receive any purchase orders for specific quantities of the mobiles until January 2004, after the licenses had expired. Further, Luv N' Care never discussed the expiration of the licenses with Big Lots, nor did it inform Big Lots that the Beatrix Potter products could not be resold outside of the United States. (*See* E.J. Hakim Depo. at 86; Ockington Depo. at 39, 98). Specifically, Mr. Hakim stated in his deposition that he did not give any thought as to whether Big Lots would be able to legally sell the Beatrix Potter products in 2004 because "once I sell it, it's out of my hands." (E.J. Hakim Depo. at 83).

In January 2004, Big Lots issued a series of eleven purchase orders for the plush crib mobile and crib mobile products.[3] (Pls.' Compl. at Exs. A1-A11). The purchase orders incorporated all of the terms of the December 2003 negotiations. The Big Lots purchase orders also added numerous additional terms, including ship date, cancellation date and twenty-three purported "terms and conditions." *Id.* The "terms and conditions," which appear on all Big Lots purchase orders, were never discussed or negotiated between the parties.

As was the custom between the parties, Big Lots paid for shipping and began picking up the products at Luv N' Care's Monroe, Louisiana warehouse in January, 2004. After each pick

---

[3] The first six purchase orders contained only the plush crib mobiles and crib mobiles at issue in this motion. The last five purchase orders contained a number of different Luv N' Care products, including item ## 2575, 2682, and 2640, which are part of Big Lots' Complaint.

up, Luv n' care would issue an invoice for the products received by Big Lots.  Like Big Lots' purchase orders, Luv n' care's invoices contained their own set of standard terms and conditions, which were never discussed between the parties.

Big Lots did not consider itself contractually bound to purchase the Beatrix Potter products until the first purchase order was issued on January 7, 2004.  (Ockington Depo. at 63).  Luv N' Care did not consider itself bound until it actually ships products to a purchaser.  Specifically Mr. Hakim testified:

Q.      You can't reach a definite agreement as to quantity of overstock items?
A.      Can't.  Impossible.
Q.      Until you ship, that's when you know what quantity you can provide?
A.      Once it's getting put on the truck, that's when I know how much quantity.
Q.      And that's when Luv N' Care is bound to a sale?
A.      Yes.

(E.J. Hakim Depo. at 44-45).  Luv N' Care did not ship any Beatrix Potter products to Big Lots until 2004, after the expiration of the license.

Upon receipt of the invoices from Luv N' Care, Big Lots began negotiating the re-selling of the merchandise.  Big Lots divided the purchased products between its retail and wholesale divisions.  All of Big Lots' retail outlets are located in the United States and there does not appear to be any dispute that Big Lots had no difficulty re-selling the Beatrix Potter merchandise through these retail outlets.  In addition to the retail sales, Big Lots' wholesale division re-sold the plush crib mobiles and crib mobiles to a large number of third-party entities throughout North America and Latin America. For example, the products were re-sold to Kozy Kitchen Korner in Lebanon, Pennsylvania; Liquidation World in Calgary, Canada; Kudzu Enterprises in Bloomington, Indiana; and Roden Surplus & Imports in Trinity, Alabama, among others. Again,

all of these sales apparently occurred without incident and Big Lots does not allege that any of these products were ever returned to the company.

However, one of Big Lots' sales representatives, Rick Baron, sold some of the Beatrix Potter plush crib mobiles to USI Limited ("USI"), a company operating out of Manchester, England. (Baron Depo. at 56-59). Although the sale was negotiated in the United States, the product was subsequently shipped to Great Britain and later re-sold by USI to Toys R' Us stores in Great Britain. Luv N' Care was not aware of Big Lots plan to make such a sale, nor did it authorize the sale in England. (*See* E.J. Hakim Aff. at ¶¶14, 15; Ockington Depo. at 74-76). In fact, Mr. Hakim was unaware that Big Lots had ever sold Luv N' Care merchandise outside of the United States. (E.J. Hakim Depo. at 81-82).

Warne, the license holder, subsequently discovered that the products were being re-sold outside their licensed territory and ordered Toys R' Us and USI to immediately stop selling the products. Big Lots subsequently accepted the return of the goods to the United States. Big Lots also apparently ceased selling the other four types of Beatrix Potter products still remaining in its inventory. Big Lots subsequently demanded that Luv N' Care accept the return of the five Beatrix Potter products, reimburse Big Lots for its costs and expenses incurred, and agree to indemnify and hold Big Lots harmless from any future infringement action that Warne might bring. Luv N' Care responded that Big Lots was responsible for its own negligence in shipping the product outside of the United States.

As a result of the dispute, Big Lots ceased payment on three Luv N' Care invoices, totaling $100,883.40. (Perkins Aff. at ¶11,12). Although a small portion of disputed Beatrix Potter products are billed on each invoice, the vast amount of the products listed on the three

invoices are not in dispute. Of the $100,883.40 billed on the three invoices, only $7,575 relates to charges for Beatrix Potter products. (*See* Luv N' Care Invoice ## 77544, 77714, and 78695, attached as Ex. 4 to Perkins Aff).  Big Lots does not dispute that the non-Beatrix Potter products listed on these three invoices were purchased by Big Lots and delivered to Big Lots.  Big Lots never returned any of this product to Luv N' Care, nor informed Luv N' Care that the product was in any way unsatisfactory. (Perkins Aff. at ¶10).

In all, Big Lots purchased approximately $165,000 worth of the five Beatrix Potter products from Luv N' Care.  Of that amount, approximately $78,000 worth of the product was re-sold without incident.  However, Big Lots currently has approximately $82,000 worth of Beatrix Potter products remaining in its inventory, including the Beatrix Potter plush crib mobiles returned by USI.[4]

On August 25, 2004, Big Lots filed the instant lawsuit, setting forth four causes of action: breach of contract; breach of the warranty of noninfringement in violation of Ohio Revised Code § 1302.25; declaratory judgment relating to common law indemnification; and unjust enrichment.  Big Lots' Complaint asserts that Luv n' care is liable on four grounds: (1) Luv N' Care sold each of the five Beatrix Potter products after its license had expired; (2) Luv N' Care warranted to Big Lots that the Beatrix Potter products could be re-sold anywhere in the world; (3) Luv N' Care agreed to indemnify Big Lots for any problems arising out of the sale or re-sale of the Beatrix Potter products; and (4) Luv N' Care was not permitted to sell these products to Big Lots under the license agreement, because Big Lots was not within Luv N' Care's "normal distribution channel."

---

[4] All but $154 of this amount is comprised of the crib mobiles and plush crib mobiles.

Luv N' Care denied liability and counterclaimed against Big Lots, seeking to recover on the three unpaid invoices. Defendants Luv N' Care assert counterclaims for breach of contract, unjust enrichment, and action upon an account in connection with three unpaid invoices totaling $100,833.40, all of which seek payment, in part, for the infringing Beatrix Potter products.

## II.    SUMMARY JUDGMENT STANDARD

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

133, 150-51 (2000).[5]  The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe.  *Id.*  Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses.  *Id.*

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989).  The court in *Street* identified a number of important principles applicable in new era summary judgment practice.  For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment.  *Id.* at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'"  *Id.* (*quoting Liberty Lobby*, 477 U.S. at 257).  The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion.  *Id.*  It is not

---

[5]  *Reeves* involved a motion for judgment as a matter of law made during the course of a trial under Fed. R. Civ. P. 50 rather than a pretrial summary judgment under Fed. R. Civ. P. 56. Nonetheless, standards applied to both kinds of motions are substantially the same.  One notable difference, however, is that in ruling on a motion for judgment as a matter of law, the Court, having already heard the evidence admitted in the trial, views the entire record, *Reeves*, 530 U.S. at 150.  In contrast, in ruling on a summary judgment motion, the Court will not have heard all of the evidence, and accordingly the non-moving party has the duty to point out those portions of the paper record upon which it relies in asserting a genuine issue of material fact, and the court need not comb the paper record for the benefit of the nonmoving party.  *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). As such, *Reeves* did not announce a new standard of review for summary judgment motions.

-10-

sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'"  *Id.* (*quoting Matsushita*, 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Id.* at 1479-80.  That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.  *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

## III.  DISCUSSION

Plaintiffs Big Lots assert four claims against Defendants Luv N' Care: breach of contract; breach of the warranty of noninfringement in violation of Ohio Revised Code § 1302.25; declaratory judgment relating to common law indemnification; and unjust enrichment.  Defendants Luv N' Care also assert counterclaims for breach of contract, unjust enrichment, and action upon an account in connection with three unpaid invoices totaling $100,833.40.  The Court will address each of the claims in order.

## A.    Choice of Law

As a preliminary matter, Defendants raise the choice of law issue.  After some analysis, Defendants assert that Ohio law applies.  While Plaintiffs do not specifically address this issue, they do cite Ohio law throughout their brief, therefore, there does not appear to be a conflict on the choice of law.  The Court agrees that Ohio law should apply in this case.  Even if there were a dispute between whether Ohio or New Jersey law should apply, both Ohio and New Jersey have adopted Article 2 of the Uniform Commercial Code which is applicable to this case, and therefore, there does not appear to be any conflict between the laws of Ohio and New Jersey.

-11-

**B.      Breach of Contract**

Plaintiffs Big Lots argue that they are entitled to summary judgment on their breach of contract claim.  Specifically, Big Lots asserts that they paid for the infringing Beatrix Potter products, but Luv N' Care breached each of the eleven contracts by failing to pass clear title to the products and by refusing to indemnify Big Lots for their losses.

Big Lots argues that between January 7, 2004 and May 11, 2004, there were eleven distinct contracts formed between the parties.  Luv N' Care, however, argues that a contract was formed between the parties in December 2003.  The timing of when the contracts were formed is crucial to the claims asserted by Plaintiffs because Defendants Luv N' Care were only permitted to sell the Beatrix Potter products through December 31, 2003 and then their license with Warne expired.

To prevail on a breach of contract claim, a plaintiff must show "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff."  *Doner v. Snapp*, 98 Ohio App.3d 597, 600 (Miami Cty. 1994).  "A valid and binding contract comes into existence when an offer is accepted."  *Mécanique C.N.C., Inc. v. Durr Environmental, Inc.*, 304 F. Supp. 2d 971, 979 (S.D. Ohio 2004).  Under Ohio law, "both parties must have a clear understanding of the terms of an agreement and an intention to be bound by its terms before an enforceable contract is created."  *Arnold Palmer Golf Co. v. Fuqua Industries, Inc.*, 541 F.2d 584, 587 (6th Cir. 1976); *see also Scotts Co. v. Central Garden & Pet Co.*, 403 F.3d 781, 788 (6th Cir. 2005) ("An enforceable contract in Ohio arises from a meeting of the minds, and must be specific as to its essential terms, such as the identity of the parties to be bound, the subject matter of the contract, consideration, a quantity term, and a price term).

-12-

An offer is defined as a "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain in invited and will conclude it." *Scotts*, 403 F.3d at 788.

There is no dispute between the parties that Mr. Hakim, on behalf of Luv N' Care, and Ms. Ockington, on behalf of Big Lots, were engaged in negotiations regarding the Beatrix Potter products in December 2003. The question is, at what point did these negotiations culminate into a contract. On December 19, 2003, Mr. Hakim faxed a price list for "overstock" items to Ms. Ockington, which also showed the state of their negotiations at the time concerning the Beatrix Potter products.

On December 23, 2003, after reviewing the price list, Ms. Ockington sent Mr. Hakim the following email:

> Hi Eddie, I received your counteroffers. I appreciate you going to bat for us on this deal, however Melanie and I both feel we are too far apart. We are passing on everything except the Mobiles. Between the two of us, you will receive the PO's for the entire quantities available. Please send me the master weight and cube, and FOB point.

(E.J. Hakim Depo. at 100, 106, and Ex. 5). Then, in response, on December 29, 2003, Mr. Hakim sent Ms. Ockington the following email:

> Ann, Hope you had a great holiday and every thing is well. I'm sorry that we're too far apart but those prices are the best that I can do, they are below my cost. As for the Mobiles, here is the information you requested....The FOB point is Monroe, LA. If you have any questions or need anything else please let me know.

(E.J. Hakim Depo. at 107, and Ex. 5). Ms. Ockington responded on December 30, 2003: "Thanks Eddie. I won't be able to get you a PO until next week. Is that ok?" (E.J. Hakim Depo. at 112, and Ex. 5). Mr. Hakim then responded on December 31, 2003: "Hi Ann, I'm looking forward to

receiving the PO's next week and if you need anything else please let me know." (E.J. Hakim Depo. at 118-119, Ex. 5).

The dispute between the parties arises in their interpretations of the aforementioned exchange of emails.  Defendants Luv N' Care argues that the mailing of the price list was an "explicit offer" and that Ms. Ockington's response to the price list was an acceptance of that offer.  (Defs' Memo. in Opp. at 6).  The Court does not agree.   It is well settled that a "price quotation is generally considered to be merely an invitation for an offer, rather than an offer to form a binding contract." *Mécanique C.N.C., Inc.*, 304 F.Supp. at 979.  Therefore, the price list was nothing more than an invitation by Luv N' Care for Big Lots to make an offer.  Ms. Ockington's response in the December 23rd email is essentially a promise to make an offer, stating that "you will receive PO's for the entire quantities available."  In the same email, she requests additional information regarding the mobiles.  Even if Ms. Ockington's email were to be construed as an offer to purchase all the available quantities of the mobiles, there still would not have been acceptance by Luv N' Care until the products were shipped.

Luv N' Care also argues that there was a contract between the parties prior to December 31, 2003, by referring to statements made by Big Lots' counsel during the course of litigation and referring to interpretations by employees of Big Lots and Luv N' Care of what constitutes a contract. Such conclusions by the employees of what constitutes a contract are irrelevant to the Court's analysis.  Further, statements of counsel are not evidence for purposes of summary judgment. *Barcamerica International USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 (9th Cir. 2002); *see also Exeter  Corp. v. Kemper Securities Group, Inc.*, 58 F.3d 1306, 1312 (8th Cir. 1995).

The Court, however, finds that in light of all the testimony provided, that the purchase orders submitted by Big Lots were intended to be the offers to purchase the Beatrix Potter products and Luv N' Care accepted when it shipped the products.  *See American Bronze Corp. v. Streamway Products*, 8 Ohio App.3d 223, 227 (Cuyahoga Cty. 1982) ("conduct sufficient to show agreement, including performance, is a reasonable mode of acceptance").  The Court therefore concludes that a contract did not exist between the parties until the goods were shipped.  This determination is consistent with Mr. Hakim's testimony that Luv N' Care is not "bound to a sale" until the product is "getting put on the truck" to be shipped. (*See* E.J. Hakim Depo. at 44-45).  It is undisputed that Luv N' Care did not ship any Beatrix Potter products to Big Lots until January 2004.  Luv N' Care therefore entered into a contract to sell Beatrix Potter products after the expiration of the license on December 31, 2003.

Defendants Luv N' Care also argues that the boilerplate terms and conditions contained in Big Lots' purchase orders materially altered the contract they believe was formed in December 2003.  However, after concluding that the purchase orders were the offers, when Luv N' Care shipped the products, they accepted the terms of the offer, including those set forth in the purchase orders.  *See Allied Steel and Conveyors, Inc. v. Ford Motor Co.*, 227 F.2d 907, 912 (6th Cir. 1960) ("[seller], by shipping the machine, accepted the offer, and thereby the offer became a contract, the terms and conditions of which became binding on both parties."); *see also Mantaline Corp. v. PPG Industries, Inc.*, 2000 WL 799337, *4 (6th Cir. 2000) ("shipment of conforming goods constituted an unqualified 'acceptance' of the offer, the resulting contract included the terms of [buyer's] purchase order providing for indemnification . . . .").

Having concluded that the terms of each of the eleven contracts entered into between the

-15-

parties included the terms and conditions set forth in Big Lots' purchase orders, Luv N' Care could

be held responsible for a breach of any of the terms of the contracts. Big Lots asserts that Luv N'

Care has breached two essential terms of the contracts and the relevant provisions are as follows:

> 15. Vendor shall indemnify, defend (at Buyer's sole option) and hold harmless
> Buyer from any and all liabilities, damages, costs, expenses and/or suits
> (whether actual or alleged), including, without limitation, reasonable
> attorneys' and experts' fees arising from the: (1) acts or omissions of Vendor
> or Vendor's agents, (2) recall of the Goods, (3) personal injury or property
> damage resulting from the use or consumption of the Goods, (4) breach of
> Vendor's warranties or a term of this PO, or (5) infringement of a third
> party's proprietary rights, including, but not limited to, trademarks, patents
> and copyrights, with respect to the Goods. Vendor shall have no right to
> limit its liabilities.

> 16. Vendor warrants that it has full and clear title, free of all liens and
> encumbrances whatsoever to the Goods and that the Goods are hereby sold
> and can be resold and used in full compliance with any and all applicable
> laws, statutes, ordinances, rules and regulations, including those governing
> the use of trade names, trademarks, copyright and patents, required by any
> government or municipal power, department, agency, authority, officer or
> otherwise, and in a manner which assures the safety of such goods for the
> patrons and customers of Buyer.

The Court concludes that Luv N' Care has breached these provisions of the eleven contracts

they entered into with Big Lots. Luv N' Care sold Beatrix Potter products to Big Lots outside of the

license period. Further, under the terms of the license agreement between Luv N' Care and Warne,

Big Lots was not an approved purchaser of the Beatrix Potter products.[6] As a result of Luv N'

Care's sale of infringed goods to Big Lots, Big Lots has suffered significant damages, costs, and

may be facing future liability for sales of the infringed goods. This Court holds, pursuant to the

_____

[6] Pursuant to the terms of the license agreement between Luv N' Care and Warne, Luv N'
Care was only permitted to sell Beatrix Potter products to Wal-Mart, Target and Toys R' Us
stores within the United States, unless they obtained prior written consent from Warne. *See*
Section XI(1)(c)(vi) of the License.

terms of the contracts between Luv N' Care and Big Lots, Luv N' Care shall indemnify, defend, and hold harmless Big Lots for any harm caused by the sale of Beatrix Potter products.

**C.    Breach of the Warranty of Non-Infringement**

Under Ohio law, "a seller warrants that he will convey good title free from any security interest or other lien or encumbrance of which the buyer is without knowledge when the contract is made.  This implied warranty is codified at R.C. 1302.25."  *Moore v. Pro Team Corvette Sales, Inc.*, 152 Ohio App.3d 71, 73 (Henry Cty. 2002).  Ohio Revised Code Section 1302.25 states in pertinent part: "(C) Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like...."  Ohio courts recognize that Ohio Revised Code Section 1302.25 is intended to provide "for a buyer's basic needs with respect to the type of title he in good faith expects to acquire by his purchase, namely, a good, clean title transferred to him in a rightful manner...."  *Moore*, 152 Ohio App. 3d at 72.

In the case at bar, Luv N' Care is a merchant regularly dealing in goods such as the Beatrix Potter products.  Luv N' Care's only defense to Big Lots remaining claims is that they sold the products prior to December 31, 2003, therefore still within their license period with Warne.  After previously concluding that Luv N' Care entered into eleven contracts to sell Beatrix Potter products to Big Lots in direct violation of Warne's intellectual property rights, these infringing products were not "delivered free of the rightful claim of any third person by way of infringement or the like."

Therefore, Luv N' Care's delivery of these infringing Beatrix Potter products to Big Lots, which Big Lots could not lawfully resell, failed to meet Big Lots' "basic needs" with respect to the type of title it expected to receive.  Big Lots is thus entitled to summary judgment on its claim

-17-

against Luv N' Care for breach of the warranty of non-infringement in violation of Ohio Revised Code Section 1302.25.

## D.    Declaratory Judgment

Plaintiffs Big Lots argue that they are entitled to declaratory judgment for common law indemnification.  "Indemnity may be defined as the right, arising out of an implied contract, of a person who has been compelled to pay what another should pay, to obtain complete reimbursement." *USX Corp. v. Penn Central Corp.*, 137 Ohio App. 3d 19, 28 (Cuyahoga Cty. 2000).  Thus, "where a person secondarily liable is compelled to respond in damages to an injured party, he may recoup his loss for the entire amount upon the basis of an implied contract of indemnity from the one who is actually at fault, and who, in fact, caused the injuries." *Allstate Ins. Co. v. U.S. Associates Realty, Inc.*, 11 Ohio App. 3d 242, 246 (Summit Cty. 1983).

Here, Luv N' Care, by knowingly selling the Beatrix Potter products to Big Lots without license or other authorization to do so, bears primary responsibility for all monetary sums expended by Big Lots as a result of selling infringing Beatrix Potter products, as well as any potential future liability.  Therefore, Big Lots is entitled to summary judgment on its declaratory judgment claim for common law indemnification.

## E.    Unjust Enrichment

Unjust enrichment occurs "when a party retains money or benefits which in justice and equity belong to another."  *Liberty Mut. Ins. Co. v. Indus. Comm.*, 40 Ohio St.3d 109, 111, 532 N.E.2d 124 (1988). To prevail on an unjust enrichment theory, the plaintiff must establish three elements, namely: (1) that it conferred a benefit on

the defendant; (2) the defendant knew of the benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust for it to retain that benefit without payment. *Cooper v. Smith*, 155 Ohio App.3d 218, 228, 800 N.E.2d 372, 379-80 (2003).

In the instant case, Big Lots conferred a benefit on Defendants Luv N' Care by paying approximately $161,844.00 for the infringing Beatrix Potter products. Defendants Luv N' Care knowingly retained the benefits, by receiving and retaining the funds. Because Defendants Luv N' Care's initial sale of the infringed Beatrix Potter products to Big Lots was unlawful, it would be unlawful and unjust for Luv N' Care to retain Big Lots' payments for those products if the products have been returned to Luv N' Care. The Court finds as a matter of law that Plaintiffs Big Lots were unjustly enriched at Defendants Luv N' Care's expense. Consequently, Plaintiffs are entitled to summary judgment in its favor on its claim for unjust enrichment.

**F.    Luv N' Care's Counterclaims**

Plaintiffs Big Lots argue that they are entitled to summary judgment on Luv N' Care's counterclaims for breach of contract, unjust enrichment, and action upon an account in connection with three unpaid invoices totaling $100,833.40, all of which seek payment, in part, for infringing Beatrix Potter products pursuant to the doctrines of equitable setoff and unclean hands. (Pls' Mot. for Summ. J. at 19). Defendants Luv N' Care also argue that they are entitled to summary judgment

on their counterclaims because Big Lots purchased and accepted the goods and therefore must pay the invoices in full.

The three unpaid invoices at issue total $100,883.40. Specifically, invoice #77544, issued on July 2, 2004, was for $28,327.20, for the sale of eleven products. Of those eleven products, only one is a Beatrix Potter product. Invoice #77714 was issued on July 7, 2004, in the amount of $53,466.60, for the sale of twelve products, including two Beatrix Potter products. Finally, invoice #78695 was issued on July 20, 2004, in the amount of $19,089.60, for the sale of eleven products, including one Beatrix Potter product. Of the $100,883.40 billed on these three invoices, Luv N' Care asserts that $93,308.40 is for non-Beatrix Potter products.

It is undisputed that all of the products listed on the invoices were sold to Big Lots and it is further undisputed that Big Lots accepted delivery of each of these products. Big Lots has not paid any of these invoices and aside from the Beatrix Potter products, has not expressed any problems with any of the other products. Luv N' Care argues that it is not liable to Big Lots for the sale of the Beatrix Potter products and even if it were, Luv N' Care is still entitled to payment for the non-Beatrix Potter products, as well as prejudgment interest on those invoices pursuant to Ohio Revised Code §1343.03(A).

The Court has previously held that Luv N' Care wrongfully sold the Beatrix Potter products to Big Lots outside of the license period and therefore Luv N' Care is in violation of the contracts between the parties. Luv N' Care is liable to Big Lots for the damages incurred by Big Lots as a result of selling the infringed Beatrix Potter products. Plaintiffs Big Lots argues that they are entitled to setoff from the money Luv N' Care owes them and the Court agrees.

The right of setoff (also called offset) allows entities that owe each other money to apply

-20-

their mutual debts against each other, thereby "avoiding the absurdity of making A pay B when B owes A." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995).  *See also In re Gordon Sel-Way, Inc.*, 270 F.3d 280, 290 (6th Cir. 2001) ("the right to setoff is a widely recognized common law right . . . .").

Defendants Luv N' Care shall therefore pay to Plaintiffs Big Lots any and all damages incurred in the sale of the infringed Beatrix Potter products minus the aforementioned amount that Big Lots owes Luv N' Care for other products on the outstanding invoices.


## IV.    CONCLUSION

Based on the foregoing, the Court **DENIES** Defendants' Motion for Partial Summary Judgment and **GRANTS** Plaintiffs' Motion for Summary Judgment.  As set forth above, Defendants Luv N' Care shall indemnify Big Lots for any expenses incurred as a result of selling the infringed Beatrix Potter products minus any set off.

The Clerk shall remove Document 29 and Document 35 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.


**IT IS SO ORDERED.**


 */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**